# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

KEITH TODD CLEMONS,       )
                                  )
         Plaintiff,         )
                                  )     Civil Action No. 2:08-00098
v.                            )     Judge Nixon / Knowles
                                  )
MICHAEL ASTRUE,         )
Commissioner of Social Security    )
                                  )
         Defendant.       )

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to obtain judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff was not disabled and denying Plaintiff Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), as provided under the Social Security Act ("the Act"), as amended. The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket Entry No. 9. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket Entry No. 15. Plaintiff has filed a Reply. Docket Entry No. 16

For the reasons stated below, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner be AFFIRMED.

1

# I. INTRODUCTION

Plaintiff filed his applications for a period of disability, DIB, and SSI[1] on July 12, 2005, alleging that he had been disabled since August 4, 2004, due to a "bad back" and lumbar disc disorder with myelopathy. Docket Entry No. 7, Attachment ("TR"), TR 60-65, 149. Plaintiff's applications were denied both initially (TR 22, 24-25) and upon reconsideration (TR 20-21, 23, 47). Plaintiff subsequently requested (TR 43-44) and received (TR 29-33) a hearing. Plaintiff's hearing was conducted on May 30, 2008, by Administrative Law Judge ("ALJ") George L. Evans, III. TR 347-366. Plaintiff and Plaintiff's sister, Robin Parker, appeared and testified. *Id*.

On August 12, 2008, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 9-19. Specifically, the ALJ made the following findings of fact:

> 1. The claimant met the insured status requirements of the Social Security Act through September 30, 2006.
>
> 2. The claimant has not engaged in substantial gainful activity since August 4, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq*., 416.920(b) and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments: back, restless legs, nerves, and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P,

---

[1] The Record does not contain an application for SSI benefits. Plaintiff's Brief reports that Plaintiff filed for SSI benefits on July 12, 2005. Docket Entry No. 10. The ALJ also noted in his opinion that Plaintiff filed for SSI benefits on July 12, 2005. TR 12.

Case 2:08-cv-00098   Document 17   Filed 07/21/09   Page 2 of 28 PageID #: 66

Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except[2] lift 20 pounds occasionally and 10 pounds frequently; stand/walk/sit for 6 hours each out of an 8-hour workday with normal breaks. The claimant can frequently perform posturals. Due to mental difficulties, the claimant is moderately limited in performance of his daily activities and in maintaining social interaction. He can perform simple one step instructions. He is limited to unskilled work.

6.      The claimant's current residual functional capacity does not preclude the performance of past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from August 4, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

TR 14-19. (Footnote added.)

On August 18, 2008, Plaintiff timely filed a request for review of the hearing decision.

TR 7. On October 7, 2008, the Appeals Council issued a letter declining to review the case (TR 3-6), thereby rendering the decision of the ALJ the final decision of the Commissioner.[3] This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. §§ 405(g) and 1383(c)(3). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

--------

[2] The ALJ utilizes "except" as a means of specifically articulating Plaintiff's capabilities.

[3] The Appeals Council considered additional evidence that it subsequently included as part of the Record. TR 6.

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

### III. CONCLUSIONS OF LAW

### A. Standards of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the

4

Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

### B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied.  42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1)  If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.

> (2)  If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.

5

(3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[4] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.

(4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.

(5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*,

---

[4] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

6

820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere.  *See* 42 U.S.C. § 423(d)(2)(B).

## C.  Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ's decision should be reversed because, 1) he suffers from an impairment or a combination of impairments that meet or medically equal one of the listed impairments in Listing 20 CFR Part 404, 416.920(d), 416.925 and 416.926, Subpart P, Appendix 1; 2) the ALJ's finding that Plaintiff can return to his past relevant work is not supported by substantial evidence; 3) the ALJ failed to give "good reasons" for the weight assigned to Plaintiff's treating physician's opinion; 4) the ALJ failed to apply the pain standard articulated by the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847 (6th Cir. 1986); and 5) the ALJ erred in failing to consider Plaintiff's obesity in determining his residual functional capacity.  Docket Entry No. 10.  Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's decision should be reversed and benefits awarded.  *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994).

**1. Meeting or Equaling a Listing**

Plaintiff argues that he suffers from an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404 Subpart P, Appendix 1, Listing 1.04C. Docket Entry No. 10.

With regard to Listings 1.00, "Musculoskeletal system," and 1.04, "Disorders of the Spine," the Code of Federal Regulations states:

> [1.00B2]b. *What we mean by inability to ambulate effectively*
>
> (1) *Definition.* Inability to ambulate effectively means an extreme limitation of the ability to walk; *i.e.*, an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) *To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place

8

of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

. . .

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

. . .

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00B2b and 1.04C.

Plaintiff argues that he suffers from lumbar spinal stenosis at the level of severity required by Listing 1.04C and that the ALJ erred in not reaching this conclusion. Docket Entry No. 10. Plaintiff argues that the ALJ erroneously found that Plaintiff did not meet the listing level of severity because he did not have motor or reflex loss, but that motor or reflex loss are components of 1.04A, not 1.04C. *Id.* Plaintiff specifically argues that the medical evidence demonstrated that Plaintiff's back injury met Listing 1.04<u>C</u> because he suffered from lumbar spinal stenosis and neurogenic claudation, and lacked the ability to ambulate effectively. *Id.* (Emphasis added.)

9

Defendant responds that the ALJ thoroughly evaluated all of Plaintiff's impairments regarding the relevant medical listings and properly concluded, based on substantial evidence, that Plaintiff's impairments did not meet or medically equal a Listing. Docket Entry No. 15. Defendant specifically responds that Plaintiff fails to meet Listing 1.04C because there is no evidence of Record suggesting that Plaintiff's lumbar spinal stenosis had resulted in pseudoclaudication or that Plaintiff had an inability to ambulate effectively. *Id.* Defendant further responds that the ALJ's mention of an incorrect criterion prior to properly rejecting the applicability of the Listing based on substantial evidence does not amount to reversible error. *Id.*

As explained above, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion," *Her*, 203 F.3d at 389 (*citing Richardson*, 402 U.S. at 401), and has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell,* 105 F.3d at 245 (*citing Consolidated Edison Co.,* 305 U.S. at 229).

The record here is replete with doctors' evaluations, medical assessments, test results, and the like, all of which were properly considered by the ALJ, and all of which constitute "substantial evidence." Additionally, the ALJ's decision demonstrates that he carefully considered Plaintiff's testimony. While it is true that some of the testimony and evidence supports Plaintiff's allegations of disability, it is also true that much of the evidence supports the ALJ's determination that Plaintiff's back pain failed to meet the requirements to establish a disability under Listing 1.04C. TR 15.

Plaintiff correctly asserts that Dr. Schwarz noted that Plaintiff's MRI findings of lumbar stenosis were "typically associated" with neurogenic claudication, which is a worsening of lower

10

extremity pain with long periods of standing and walking. Docket Entry No. 10, TR 205. Dr. Schwarz did not diagnose Plaintiff with neurogenic claudication, however, but rather with having a herniated nucleus pulposus at L3-4 and L4-5; spinal stenosis between L3 and L5; osteoarthritis at L3-4, L4-5, and L5-S1; degenerative disc disease at L3-4 and L4-5; facet arthritis at L5-S1, L3-4, and L4-5; and a vertebral fracture in the form of bilateral pars fractures at L5-S1. TR 203, 205.

Additionally, Plaintiff failed to adduce evidence that his spinal stenosis resulted in an inability to ambulate effectively. While Dr. Rutherford opined that Plaintiff had an abnormal gait and that it would be in Plaintiff's "best interest" to use a cane or other assistive device when walking, he never prescribed a cane or other assistive device to Plaintiff, nor did he indicate that Plaintiff was unable to walk without such a device. TR 73-80. In fact, Dr. Rutherford opined that Plaintiff could walk two city blocks at most without rest or severe pain. *Id.*

Other evidence of Record fails to demonstrate limitations in Plaintiff's ability to ambulate. For example, Dr. Schwarz noted at his deposition that Plaintiff had never reported on his questionnaire that walking made his pain worse. TR 205, 212. On August 9, 2007, Dr. Schwarz opined that Plaintiff had made "remarkable improvement" since the placement of a lumbar sacral orthotic and physical therapy, and he reduced Plaintiff's status to an "as-needed" basis with a long-term goal of having him off of narcotics all together. TR 187. Dr. Hester noted that Plaintiff could return to work with restrictions concerning only his bending and lifting. TR 241, 243. Dr. Blevins noted that Plaintiff's gait and station appeared normal, that he could get on and off the table, and that he could get up from a chair. TR 250. Dr. Blevins further noted that Plaintiff could bend, squat, and rise without an assistive device. *Id.* Dr. Misra found

11

that Plaintiff could stand and/or walk for a total of about six hours in an eight-hour workday and that Plaintiff's impairment was severe, but not severe enough to meet or equal the Listings.  TR 257, 263.  Dr. Jain's treatment notes report that Plaintiff had a full range of motion in all joints and had a normal gait.  TR 291-312.

An ALJ has the duty to review all of the medical and testimonial evidence relevant to a claim.  20 C.F.R. § 404.1527(c) and 20 C.F.R. § 416.927(c).  If the ALJ finds inconsistencies in the record, he will weigh all of the evidence to determine whether, based upon that evidence, disability within the meaning of the Act and Regulations exists.  20 C.F.R. § 404.1527(c)(2) and 20 C.F.R. § 416.927(c)(2).  After reviewing the medical evidence in its entirety, the ALJ concluded that Plaintiff failed to demonstrate the criteria for Listing 1.04C.  TR 15.  This determination was proper.

As has been noted, the reviewing court does not substitute its findings for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner*, 745 F.2d at 387.  In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached.  *Her*, 203 F.3d at 389 (*citing Key*, 109 F.3d at 273).  The ALJ's decision was properly supported by "substantial evidence;" the ALJ's decision, therefore, must stand.

While Plaintiff argues that the ALJ deprived Plaintiff of a full and fair hearing because he noted that Plaintiff did not have motor or reflex loss, which is a criterion under Listing 1.04A (and not under Listing 1.04C, under which Plaintiff claims disability), the ALJ simply did not do so.  Docket Entry No. 10, TR 15.  Plaintiff correctly asserts that the ALJ noted that Dr. Schwarz observed that Plaintiff had failed to demonstrate any motor or reflex loss that was reflective of

12

Listing 1.04C. TR 15. The ALJ's notation of 1.04C instead of 1.04A is harmless error because the evidence of Record, as noted above, demonstrated that Plaintiff failed to meet the criteria for a disability under Listing 1.04C. Plaintiff's argument fails.

## 2. Past Relevant Work

Plaintiff argues that the ALJ's finding that Plaintiff could return to his past relevant work was not supported by substantial evidence. Docket Entry No. 10. Plaintiff further argues that his previous employment as a machine operator required him to stand for six hours in an eight-hour day while lifting boxes in excess of fifty pounds. *Id.* Plaintiff contends that the ALJ decided that Plaintiff could perform this past relevant work even though he determined that Plaintiff retained the RFC for light work, which indicates that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours each out of an eight-hour workday with normal breaks; and perform frequent postural activities. *Id.*

Defendant responds that the ALJ properly determined that Plaintiff retained the vocational ability to return to his past relevant work. Docket Entry No. 15. Defendant further responds that the ALJ needed only to conclude that Plaintiff retained the ability to perform the job as it was generally performed in the national economy in order to properly determine that Plaintiff could return to his past relevant work. *Id.* Additionally, Defendant responds that Plaintiff's past relevant work as a machine press operator, as generally performed in the national economy, is classified as light and unskilled. *Id.* Defendant argues that because the ALJ found that Plaintiff retained the RFC for light work, and because Plaintiff's past relevant work as a machine operator is classified as light work as generally performed, the ALJ properly determined that Plaintiff could return to his past relevant work. *Id.*

13

The Sixth Circuit has held that a claimant must prove an inability to perform his former type of work rather than a specific former job. *Studaway v. Secretary of H.H.S.*, 815 F.2d 1074, 1076 (6th Cir. 1987). In *Studaway*, the Court further held that, although the evidence established the claimant was limited to light work and could not return to a former custodial job requiring medium exertion, vocational testimony establishing the existence of a significant number of custodial jobs requiring only light exertion supported the Secretary's determination that the claimant could perform his former type of work. *Id.*

Plaintiff alleges that his previous job as a machine press operator demanded that he perform duties commensurate with an exertional level greater than the ALJ's RFC assessment of Plaintiff would permit. Docket Entry No. 10. Plaintiff, however, fails to consider how the Dictionary of Occupation Titles ("DOT") classifies the exertional level of an assembly press operator. According to the DOT, an assembly press operator requires light work, exerting up to twenty pounds of force occasionally, and/or up to ten pounds of force frequently. *Dictionary of Occupational Titles* 690.685-014. As noted above, Plaintiff carried the burden of demonstrating that he had an inability to perform his former type of work rather than his specific former job. As classified by the DOT, an assembly press operator's exertional level is consistent with Plaintiff's RFC for light work as determined by the ALJ.

Plaintiff also argues that the ALJ erroneously relied upon the opinions of Plaintiff's treating neurologist and the state agency physician when determining that Plaintiff could return to light work. Docket Entry No. 10. Plaintiff specifically argues that the ALJ's reliance upon those opinions was erroneous because neither of those physicians had the opportunity to review the MRI referenced by Dr. Schwarz and Dr. Rutherford in rendering their opinions. *Id.* While it

14

is true that neither Plaintiff's treating neurologist nor the state agency physician had the

opportunity to review the referenced MRI, as can be seen below, the ALJ did not base his

determination solely upon the opinions of Plaintiff's treating neurologist and the state agency

physician. Moreover, Dr. Schwarz's findings were not inconsistent with an RFC for light work.

With regard to the evidence considered by the ALJ in determining Plaintiff's RFC, the

ALJ specifically articulated his findings in pertinent part as follows:

> After considering the evidence of record, the undersigned finds
> that the claimant's medically determinable impairments are not
> credible to the extent they are inconsistent with the residual
> functional capacity assessment for the reasons explained below.
>
> The medical evidence reveals that the claimant sustained a fall and
> neurosurgeon Dr. Hester opined that the claimant had a muscle
> pull in his back; prescribed muscle relaxants, anti-inflammatories,
> and pain medicines, and he recommended that the claimant return
> to work. Straight leg raise test was negative and radiographic tests
> showed only a bilateral pars defect but no spondylolisthesis. [TR
> 240-241, 243-246.]
>
> Neurosurgeon Dr. Berkman also examined the claimant and
> recommended that the claimant utilize a TENS unit; participate in
> physical therapy; and seek treatment with epidural injections if his
> back pain did not improve. [TR 242.]
>
> Neurosurgeon Dr. Schwartz[5] examined the claimant, and
> performed an MRI that showed evidence of a disc herniation that
> caused central canal stenosis and significant stenosis on both sides.
> The physician recommended conservative treatment that included
> physical and pain medications [*sic*]. An interrogatory that the
> physician participated in revealed that the physician was of the
> opinion that typically neurogenic claudication associated with a
> herniated nucleus pulposus and canal stenosis tended to exacerbate
> lower extremity pain, especially when an individual walked or
> stood for an extended period of time. Subsequent to prescribing

---

[5] The ALJ incorrectly spells Dr. Schwarz's name as Dr. Schwartz throughout his
decision. TR 14-19.

15

the claimant's lumbar sacral orthotic and physical therapy, the physician released the claimant to return on an as-needed basis and further recommended that he significantly decrease and eventually cease all use of narcotic pain medications. [TR 187, 190, 199-206, 237-239.]

The claimant sought treatment from Dr. Jain for his complaints of back, hip, and leg pain, and was treated conservatively with muscle relaxants, pain pills, and a back brace. The claimant related that physical therapy had been recommended but that he could not afford it due to lack of medical insurance. An MRI of his lumbar spine showed lumbar spondylosis with only mild to moderate disc protrusion; minimal annular bulge; and bilateral pars defect at L5. [TR 280-282, 287-328.]

The claimant presented for physical therapy evaluation but medical notes showed that he did not return for any recommended visits. [TR 266-271]

A CT scan of his lumbar spine was performed and demonstrated evidence of minimal central stenosis at L4-5 with borderline minimal stenosis at L3-L4. There was probable left lateral recess stenosis at L5-S1. [TR 253.]

Dr. Blevins performed a consultative physical examination of the claimant, and Dr. Blevins limited him to light work; stand 2 hours per day and sit for 4 hours per day with no frequent lifting. Diagnoses were upper respiratory allergies, hyperlipidemia, degenerative disc disease causing radiculopathy and spinal stenosis; chronic pain syndrome; musculoskeletal pain disorder; osteoarthritis; and obesity. [TR 247-252.]

TR 17-18.  (Footnote added.)

"Residual Functional Capacity" ("RFC") is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c).  With regard to the evaluation of physical abilities in determining a claimant's Residual Functional Capacity, the Regulations state:

When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your

16

> residual functional capacity for work activity on a regular and
> continuing basis. A limited ability to perform certain physical
> demands of work activity, such as sitting, standing, walking,
> lifting, carrying, pushing, pulling, or other physical functions
> (including manipulative or postural functions, such as reaching,
> handling, stooping or crouching), may reduce your ability to do
> past work and other work.

20 C.F.R. § 404.1545(b).

The ALJ analyzed in detail the medical evidence concerning Plaintiff's ability to perform

exertional activities and considered Plaintiff's testimony regarding his ability to lift, stand, and

walk. TR 16-18. The ALJ specifically addressed Plaintiff's ability to perform each vocational

function, concluding that Plaintiff could lift twenty pounds occasionally and ten pounds

frequently; stand, walk, and sit for six hours each in an eight-hour workday with normal breaks;

and frequently perform other postural movements. *Id.* The ALJ also found that Plaintiff's

mental difficulties moderately limited him in his performance of daily activities and in

maintaining social interaction. *Id.* Accordingly, the ALJ limited Plaintiff to simple, one-step

instructions and unskilled work. *Id.* The ALJ's determination that Plaintiff could return to his

past relevant work as an assembly press operator was proper; the ALJ's decision, therefore, must

stand.

### 3. Weight Accorded to Medical Opinions

Plaintiff argues that the ALJ failed to articulate "good reasons" for "rejecting" the

opinions of Dr. Schwarz and Dr. Rutherford, two of Plaintiff's treating physicians. Docket Entry

No. 10. Plaintiff specifically argues that the ALJ failed to consider Dr. Rutherford's conclusion,

based on Dr. Schwarz's findings, that Plaintiff was unable to sit for more than an hour at a time,

17

and could not walk any distance because he had to constantly shift weight. *Id.* Additionally, Plaintiff argues that "it is not known why the ALJ either ignored or disregarded" Dr. Rutherford's opinion, but that the ALJ's failure to articulate his reasons for rejection constitutes reversible error. *Id.*

Defendant responds that the ALJ properly discounted Dr. Rutherford's opinion because it was unsupported by medically acceptable clinical and laboratory diagnostic tests and was inconsistent with other substantial evidence of Record. Docket Entry No. 15. Defendant specifically contends that Dr. Rutherford's opinion directly conflicted with that of Dr. Schwarz and with Dr. Rutherford's own treatment notes. *Id.* Defendant also responds that the ALJ's failure to discuss Dr. Rutherford's opinion during the RFC assessment was harmless because the ALJ articulated several reasons for rejecting Dr. Rutherford's opinion at step three. *Id.*

With regard to the evaluation of medical evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating

source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. ...

> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. ...

> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

> ...

20 C.F.R. § 416.927(d) (emphasis added). *See also* 20 C.F.R. § 404.1527(d).

If the ALJ rejects the opinion of a treating source, he is required to articulate some basis for rejecting the opinion. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

Plaintiff contends that the ALJ failed to specifically articulate the reasons why he

19

rejected Dr. Rutherford's medical opinion.  Docket Entry No. 10.  Plaintiff is partially correct in his assertion.  The ALJ properly discussed and discounted Dr. Rutherford's opinion when evaluating whether Plaintiff's impairments met or equaled a Listing (TR 15), but did not mention it again during his analysis of Plaintiff's RFC.

The Sixth Circuit has held that, even though an ALJ may not technically meet the procedural requirement to give good reason for not according controlling weight to a treating physician's opinion, it is harmless error if the reasoning behind his use of each physician's opinion is clear.  *Hickey-Haynes v. Barnhart*, 116 Fed. Appx. 718, 725 (6th Cir. 2004) (*citing Wilson v. Comm'r of Soc. Sec*., 378 F.3d 541, 545 (6th Cir. 2004)).  The ALJ in the case at bar clearly demonstrated that Dr. Rutherford's opinion conflicted with the other medical evidence of Record.  For example, the ALJ noted that Dr. Rutherford had opined that Plaintiff's back and leg pain limited his ability to stand, walk, and sit for any appreciable amount of time such that he met Listing 1.04C.[6]  TR 15.  The ALJ also noted that Dr. Rutherford had based his decision upon radiographic tests that Dr. Schwarz had performed, which revealed a herniated nucleus pulposus and canal stenosis that caused radicular pain.  TR 15, 73-82.  Although based upon the same radiographic tests, Dr. Rutherford's opinion conflicted with Dr. Schwarz's opinion.  Dr. Schwarz did not find Plaintiff to be so severely limited.  In fact, Dr. Schwarz wrote Dr. Rutherford on August 9, 2007, and noted that Plaintiff had made "remarkable improvement" with the placement of a lumbar sacral orthotic and physical therapy.  TR 187.  Dr. Schwarz also noted that his long-term goal was to have Plaintiff off narcotic pain medicine altogether and that he

---

[6] Dr. Rutherford specifically opined that Plaintiff was limited to walking no more than two blocks at a time, standing for no more than fifteen minutes at a time, sitting for no more than forty-five minutes at a time, and having to miss at least four days of work per month.  TR 78-81.

planned to see Plaintiff on an as-needed basis. *Id.* The ALJ noted that Dr. Schwarz had opined that Plaintiff was able to be released from conservative care with no indication of any type of surgery being necessary. TR 15.

Additionally, the other medical opinions of Record failed to find Plaintiff as severely limited as did Dr. Rutherford. Dr. Blevins opined that Plaintiff retained the ability to occasionally lift less than twenty pounds, to stand up to two hours per day, and to sit up to four hours per day. TR 247-252. Dr. Misra opined that Plaintiff's impairment was severe, but not severe enough to meet the criteria of any Listing. TR 256-263. Dr. Misra further opined that Plaintiff had the ability to occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and/or walk (with normal breaks) for a total of about six hours in an eight-hour workday, sit (with normal breaks) for a total of about six hours in an eight-hour workday, and frequently perform postural activities. *Id.* Dr. Rutherford's own treatment notes indicated that, for all but one visit, Plaintiff had a full range of motion in all joints in his musculoskeletal system. TR 161-175.

Dr. Rutherford treated Plaintiff for eight months, a fact that would normally justify the ALJ's giving greater weight to his opinion than to opinions of non-treating sources. As has been noted, however, Dr. Rutherford's opinion contradicted other substantial evidence in the Record, including his own treatment notes. As the Regulations state, the ALJ is not required to give controlling weight to a treating physician's evaluation when that evaluation is inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2) and 20 C.F.R. § 404.1527(d)(2). Instead, when there is contradictory evidence, the treating physician's opinion is weighed against the contradictory evidence under the criteria listed above. *Id.* When the

21

opinions of treating physicians are inconsistent with each other, the final decision regarding the weight to be given to the differing opinions lies with the Commissioner. 20 C.F.R. § 416.927(e)(2). As such, the Regulations do not mandate that the ALJ accord Dr. Rutherford's opinion controlling weight.

## 4. Allegations of Pain

Plaintiff argues that the ALJ failed to apply the two-part test for evaluating subjective complaints of pain set forth in *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986), because the objective medical evidence in the case at bar demonstrated that Plaintiff's underlying medical conditions were of such severity that they could reasonably be expected to cause the level of disabling pain alleged.[7] Docket Entry No. 10. Plaintiff further argues that the reasons why the ALJ determined that Plaintiff's allegations of pain lacked credibility actually failed to undermine his credibility. *Id.* Plaintiff contends that nothing in the Record refutes his allegations of disabling pain. *Id.* Additionally, Plaintiff argues that his ability to perform some light activities of daily living is not inconsistent with the presence of disabling pain and that substantial evidence fails to support the ALJ's refusal to credit Plaintiff's pain. *Id.*

Defendant responds that the ALJ properly applied the pain standard contained in *Duncan* because he determined that the objective medical evidence failed to support the severity of Plaintiff's alleged limitations and then found that Plaintiff's statements regarding the severity of

---

[7] The two-part test to which Plaintiff refers requires as follows. In step one, the adjudicator must determine whether there is objective medical evidence showing the existence of a medical impairment that could be reasonably expected to produce the pain or other symptoms alleged. In step two, the adjudicator must evaluate the intensity and persistence of the symptoms to determine how they limit the capacity for work. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847 (6th Cir. 1986). *See also* 20 CFR §§ 404.1529, 416.929.

his pain were not fully credible.  Docket Entry No. 15.  Defendant further responds that

Plaintiff's description of his daily activities was inconsistent with the degree of pain and physical

limitations alleged.  *Id.*  Additionally, Defendant responds that the ALJ properly relied on

substantial evidence in determining Plaintiff's credibility because Plaintiff demonstrated an

ability to perform additional activities of longer duration, which conflicted with his alleged

maximum ability to sit for forty-five minutes.  *Id.*

The Sixth Circuit has set forth the following criteria for assessing a plaintiff's allegations

of pain:

> [S]ubjective allegations of disabling symptoms, including pain,
> cannot alone support a finding of disability...[T]here must be
> evidence of an underlying medical condition *and* (1) there must
> be objective medical evidence to confirm the severity of the
> alleged pain arising from the condition *or* (2) the objectively
> determined medical condition must be of a severity which can
> reasonably be expected to give rise to the alleged pain.

*Duncan*, 801 F.2d at 853 (6th Cir. 1986) (*quoting* S. Rep. No. 466, 98th Cong., 2d Sess. 24)

(Emphasis added); *see also* 20 C.F.R. §§ 404.1529, 416.929 ("[S]tatements about your pain or

other symptoms will not alone establish that you are disabled...."); and *Moon v. Sullivan*, 923

F.2d 1175, 1182-83 ("[T]hough Moon alleges fully disabling and debilitating symptomology, the

ALJ, may distrust a claimant's allegations...if the subjective allegations, the ALJ's personal

observations, and the objective medical evidence contradict each other.").  Moreover,

"allegations of pain...do not constitute a disability unless the pain is of such a debilitating degree

that it prevents an individual from engaging in substantial gainful activity."  *Bradley v.*

*Secretary*, 862 F.2d 1224, 1227 (6th Cir. 1988).

When analyzing the claimant's subjective complaints of pain, the ALJ must also consider the following factors and how they relate to the medical and other evidence in the record: the claimant's daily activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain. *See Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994) (*construing* 20 C.F.R. § 404.1529(c)(2)). After evaluating these factors in conjunction with the evidence in the record, and by making personal observations of the claimant at the hearing, an ALJ may determine that a claimant's subjective complaints of pain and other disabling symptoms are not credible. *See, e.g., Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir. 1997); *Blacha v. Secretary*, 927 F.2d 228, 230 (6th Cir. 1990); and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981).

In the case at bar, the ALJ found that Plaintiff's complaints of pain were not fully credible. TR 18. In reaching this determination, the ALJ specifically articulated that Plaintiff reported performing light household chores, such as dusting, mopping, and washing and drying clothes. *Id.* The ALJ also noted that Plaintiff drove his car to Nashville and rode around in his friend's car.[8] *Id.* The ALJ discussed Plaintiff's report that he watched television and attended movies, which the ALJ noted normally last longer than forty-five minutes, stating, "so it stands to reason that [Plaintiff] would be sitting longer than 45 minutes while watching a movie." *Id.* After reviewing the objective and testimonial evidence of Record, the ALJ concluded that Plaintiff's ability to engage in such daily activities negated the credibility of the level of severe

---

[8] Plaintiff lives in Cookeville, Tennssee, which is approximately eighty miles from Nashville. Driving to Nashville from Cookeville, therefore, would require Plaintiff to be in the car for over an hour in each direction.

pain Plaintiff alleged. *Id.*

The ALJ further opined that one would not reasonably anticipate that a person who experienced the drowsiness and medicinal side effects alleged or the degree of pain alleged, would have the ability to tolerate the physical demands, the level of concentration, or the amount of social interaction necessary to perform many of Plaintiff's reported activities. *Id.* The ALJ also noted that Plaintiff's pharmacy had observed that Plaintiff overused his medication monthly, routinely requesting refills several days before their refilling date. TR 18, 163.

As can be seen, the ALJ's decision specifically addressed in great detail not only the medical evidence, but also Plaintiff's testimony and his subjective claims, clearly indicating that these factors were considered. TR 15-18. The ALJ's decision properly discusses Plaintiff's "activities; the location, duration, frequency and intensity of claimant's pain; the precipitating and aggravating factors; the type, dosage and effect of medication; and the other treatment or measures to relieve pain." *Felisky*, 35 F.3d at 1039 (*construing* 20 C.F.R. § 404.1529(c)(2)). It is clear from the ALJ's detailed articulated rationale that, although there is evidence which could support Plaintiff's claims, the ALJ chose to rely on medical findings that were inconsistent with Plaintiff's allegations. This is within the ALJ's province.

The ALJ, when evaluating the entirety of the evidence, is entitled to weigh the objective medical evidence against Plaintiff's subjective claims of pain and reach a credibility determination. *See, e.g., Walters,* 127 F.3d at 531; and *Kirk v. Secretary,* 667 F.2d 524, 538 (6th Cir. 1981). An ALJ's findings regarding a claimant's credibility are to be accorded great weight and deference, particularly because the ALJ is charged with the duty of observing the claimant's demeanor and credibility. *Walters,* 127 F.3d at 531 (*citing Villarreal v. Secretary,* 818 F.2d 461,

25

463 (6th Cir. 1987)).  Discounting credibility is appropriate when the ALJ finds contradictions among the medical reports, the claimant's testimony, the claimant's daily activities, and other evidence.  *See Walters*, 127 F.3d at 531 (*citing Bradley,* 682 F.2d at 1227; *cf King v. Heckler*, 742 F.2d 968, 974-75 (6th Cir. 1984); and *Siterlet v. Secretary*, 823 F.2d 918, 921 (6th Cir. 1987)).  If the ALJ rejects a claimant's testimony as not credible, however, the ALJ must clearly state the reasons for discounting a claimant's testimony (*see Felisky*, 35 F.3d at 1036), and the reasons must be supported by the record (*see King*, 742 F.2d at 975).

The ALJ observed Plaintiff during his hearing, assessed the medical records, and reached a reasoned decision; the ALJ's findings are supported by substantial evidence and the decision not to accord full credibility to Plaintiff's allegations was proper.

**5.  Obesity**

Plaintiff contends that the ALJ committed reversible error by failing to consider his obesity in determining his RFC.  Docket Entry No. 10.  Specifically, Plaintiff contends that the ALJ failed to discuss how Plaintiff's obesity "could potentially aggravate his severe orthopedic injuries."  *Id.*

Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff has retained an RFC to perform light work with certain restrictions.  Docket Entry No. 15.  Defendant further responds that Plaintiff failed to prove that his obesity had any effect on his physical limitations.  *Id.* Defendant also contends that the ALJ considered Plaintiff's height and weight when determining his RFC.  *Id.*

Although Plaintiff argues that the ALJ committed reversible error by failing to consider

26

Plaintiff's obesity when determining his RFC, the ALJ simply did not do so. Docket Entry No. 10. The ALJ in fact noted that, at the time of the hearing, Plaintiff was 5' 9" tall and weighed 240 pounds and had gained weight. TR 17, 361. Additionally, the ALJ noted that Dr. Blevins had diagnosed Plaintiff with obesity. TR 18, 252.

Plaintiff, in his Brief, mischaracterizes Dr. Rutherford's findings regarding Plaintiff's weight gain by stating that Dr. Rutherford found that Plaintiff "had gained a considerable amount of weight during the time he had treated him." Docket Entry No. 10. Dr. Rutherford actually noted that Plaintiff had weighed 229 pounds on his first visit and 240 pounds on his last visit, a weight gain of eleven pounds in eight months. TR 76-77.

Although Plaintiff correctly cites legal authority that obesity can, in conjunction with other impairments, increase the severity of an individual's limitations, Plaintiff did not testify in his hearing about any complaints resulting from his weight (*see* TR 347-366), nor did Plaintiff point to any evidence in the Record from any physician suggesting an aggravation of his symptoms as a result of his weight. Plaintiff has failed to demonstrate that his obesity has had any effect on his physical limitations.

After careful consideration of the Record, including Plaintiff's weight and diagnosis of obesity, the ALJ properly determined Plaintiff's RFC to perform light work. TR 16-18. Plaintiff's claim fails.

## IV. RECOMMENDATION

For the reasons discussed above, the undersigned recommends that Plaintiff's Motion for Judgment on the Administrative Record be DENIED, and that the decision of the Commissioner

27

be AFFIRMED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has ten (10) days after service of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have ten (10) days after service of any objections filed in which to file any responses to said objections. Failure to file specific objections within ten (10) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied,* 474 U.S. 1111 (1986).

E. CLIFTON KNOWLES
United States Magistrate Judge

28